UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———————

ALEXANDER T. CROCKETT

        Plaintiff,

vs.

AUDI OF AMERICA, INC.,
a foreign corporation,

        Defendant.

Case No.
Hon.

_____/

Carol A. Laughbaum (P41711)
STERLING ATTORNEYS AT LAW, P.C.
Attorneys for Plaintiff
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500
claughbaum@sterlingattorneys.com
_____/

# COMPLAINT AND JURY DEMAND

Plaintiff, Alex Crockett, by his attorneys Sterling Attorneys at Law, P.C., for his Complaint against Defendant, submits the following:

### JURISDICTION AND PARTIES

1. This is an action for national origin discrimination and retaliation in violation of Michigan's Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq*.; disability discrimination in violation of Michigan's Persons with Disabilities Civil Rights Act, MCL 37.1101 *et seq*.; and intentional infliction of emotional distress in violation of Michigan common law.

2. Plaintiff's claims arise out of his employment relationship with Defendant.

3. Plaintiff Alexander T. Crockett ("Plaintiff Crockett" "Plaintiff," or "Crockett") is a citizen of Michigan.

4. Defendant Audi of America, Inc., part of the Volkswagen Group of America ("Defendant Audi" or "Defendant") is a citizen of Virginia, in that it maintains its corporate headquarters and principal place of business in Virginia.

5. The events giving rise to this cause of action occurred within the Eastern District of Michigan, where Defendant Audi conducts business.

6. The amount in controversy exceeds $75,000.

7. This Court has subject matter jurisdiction of Plaintiff's claims pursuant to 28 USC 1332 (diversity of citizenship).

8. Jurisdiction and venue of this matter properly lie within this Court.

### BACKGROUND FACTS

9. On or about June 2013, Plaintiff Crockett became employed by Defendant Audi.

10. Plaintiff's final position with Defendant was Product Support Engineer (Electrical).

11. Plaintiff was born in the United States.

12. Plaintiff is a person with a disability – ASD (autism spectrum disorder).

13. Throughout his employment, Plaintiff performed his job duties in a manner that was satisfactory or better.

14. Throughout his employment, Plaintiff reported indirectly to Director Juergen Gumbinger, who was born in German and is of German ancestry.

15. At the time of Plaintiff's hire, all or most of Gumbinger's direct reports were German-born.

16. During Plaintiff's employment, Gumbinger repeatedly made disparaging comments about the fact that Plaintiff was not born in Germany, including telling him he was not good enough because he was not German, "not one of us," that Crockett was not going to "get it" because he was not German, and that no one would listen to Crockett as he was not German.

17. Plaintiff Crockett also observed that German-born employees were given preferential treatment by Defendant.

18. For example, Plaintiff applied for posted jobs he was well qualified to fill, only to see the posting removed and the position changed to a higher salary band, with higher pay, after which a German-born employee was immediately placed into the job, as upgraded.

19. Crockett was also belittled, and subjected to degrading and humiliating treatment by Gumbinger.

20. Among other things, Gumbinger yelled at Crockett and threatened his job and performance ratings, told Crockett he was stupid, an idiot, and a moron, told Crockett he would never go anywhere, asked Crockett if something was wrong with Crockett and Crockett's face, and instructed Crockett during a virtual team meeting to turn off his camera, stating that Crockett's face was "making me sick."

21. Gumbinger also made it clear that he took a dim view of the company's D&I (diversity and inclusion) Council, which Crockett sat on, and pressured Crockett to resign.

22. Crockett was also treated differently in numerous ways with respect to the terms, benefits and conditions of his employment compared to his colleagues.

23. Over time, and following Gumbinger's lead, Plaintiff's direct manager also harassed and subjected Plaintiff to disparate treatment.

24. On June 16, 2022, Crockett complained in writing to his direct manager about the belittling treatment and hostility, including Gumbinger's discriminatory comments about Crockett's national origin, and asked that that behavior stop.

25. On or about August 22, 2022, Plaintiff received a "Final Written Warning," the first disciplinary action he had ever received at Audi (10 years).

26. The Final Written Warning contained false and trumped-up allegations.

27. Also on August 22, 2022, at the recommendation of Audi Compliance, Plaintiff filed an HR Complaint against his management.

28. Plaintiff's allegations included that he was discriminated against and denied equal terms, benefits and conditions of his employment because of national origin discrimination.

29. On January 24, 2023, Plaintiff specifically disclosed his ASD diagnosis to HR.

30. On February 3, 2023, Defendant terminated Plaintiff, but provided no termination reason.

### *National Origin Harassment and Discrimination in Violation of Michigan's Elliott-Larsen Civil Rights Act*

31. Plaintiff incorporates the preceding paragraphs by reference.

32. At relevant times, Plaintiff Crockett was an employee and Defendant Audi was his employer covered by and within the meaning of Michigan's Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq.*

33. Michigan's ELCRA prohibits national origin discrimination, which includes national origin harassment.

34. Defendant, by its agents and employees, subjected Plaintiff to unwanted comments and conduct due to his national origin, which was severe and/or pervasive, constituting a hostile work environment.

35. Defendant failed to take prompt remedial action to end the harassment, exacerbating Plaintiff's hostile work environment.

36. As a direct and proximate result of those actions, the terms, conditions, and benefits of Plaintiff's employment were adversely affected.

37. As a direct and proximate result of Defendant's wrongful and discriminatory treatment of Plaintiff Crockett, he has suffered injuries and damages, including but not limited to, loss of past, present and future earnings and earning capacity; loss of the value of fringe, pension and stock benefits; losses with respect to social security; physical, mental and emotional distress, including anxiety and mental anguish, humiliation and embarrassment; and the loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful occupation of choice.

## COUNT II

*Retaliation in Violation of Michigan's ELCRA*

38. Plaintiff incorporates the preceding paragraphs by reference.

39. Michigan's ELCRA prohibits retaliation against persons who complain about national origin discrimination and harassment.

40. Plaintiff engaged in activity protected by ELCRA when he complained of national origin harassment and discrimination to his manager, and HR.

41. Plaintiff's termination was retaliation for having engaged in protected activity, in violation of the anti-retaliation provisions set forth in ELCRA.

42. The actions of Defendant were intentional, in deliberate disregard for the rights and sensibilities of Plaintiff.

43. As a direct and proximate result of Defendant's wrongful and discriminatory treatment of Plaintiff Crockett, he has suffered injuries and damages, including but not limited to, loss of past, present and future earnings and earning capacity; loss of the value of fringe, pension and stock benefits; losses with respect to social security; physical, mental and emotional distress, including anxiety and mental anguish, humiliation and embarrassment; and the loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful occupation of choice.

## COUNT III

*Disability Discrimination in Violation of Michigan's*
*Persons with Disabilities Civil Rights Act*

44. Plaintiff incorporates the preceding paragraphs by reference.

45. At relevant times, Plaintiff Crockett was an employee and Defendant Audi was his employer covered by and within the meaning of Michigan's Persons with Disabilities Civil Rights Act (PWDCRA), MCL 37.1101 *et seq.*

46. Michigan's PWDCRA prohibits harassment and discrimination on the basis of a disability.

47. Defendant discriminated against Plaintiff as set forth above due to Plaintiff's disability.

48. The discriminatory practices at issue were intentional, in deliberate disregard of the rights and sensibilities of Plaintiff.

49. As direct and proximate result of Defendant's wrongful and discriminatory treatment of Plaintiff Crockett, he has suffered injuries and damages, including but not limited to, loss of past, present and future earnings and earning capacity; loss of the value of fringe benefits; losses with respect to social security; physical, mental and emotional distress, including anxiety and mental anguish, humiliation and embarrassment; and the loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful occupation of choice.

## COUNT IV

### *Intentional Infliction of Emotional Distress*

50. Plaintiff incorporates the preceding paragraphs by reference.

51. The conduct of Defendant, by its agent Gumbinger, toward Plaintiff was extreme and outrageous.

52. The conduct of Defendant, by its agent Gumbinger, toward Plaintiff was engaged in intentionally, maliciously, and with reckless disregard for the rights and sensibilities of the Plaintiff.

53. As direct and proximate result of Defendant's wrongful and discriminatory treatment of Plaintiff Crockett, he has suffered injuries and damages, including but not limited to, loss of past, present and future earnings and earning capacity; loss of the value of fringe benefits; losses with respect to social security; physical, mental and emotional distress, including anxiety and mental anguish, humiliation and embarrassment; and the loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful occupation of choice.

## RELIEF REQUESTED

For all the foregoing reasons, Plaintiff Crockett demands judgment against Defendant as follows:

**A.   Legal Relief**

1. Compensatory damages in whatever amount he is found to be entitled;

2. Exemplary damages in whatever amount he is found to be entitled;

3. A judgment for lost wages and benefits in whatever amount he is found to be entitled;

4. An award of interest, costs and reasonable attorney fees; and

5. Whatever other legal relief appears appropriate at the time of final judgment.

**B.   Equitable Relief:**

1. An injunction out of this Court prohibiting any further acts of wrong-doing;

2. An award of interest, costs and reasonable attorney fees; and

3. Whatever other equitable relief appears appropriate at the time of final judgment.

## JURY DEMAND

Plaintiff Alex Crockett, by his attorneys Sterling Attorneys at Law, P.C., requests a trial by jury.

                        Respectfully submitted,

                        STERLING ATTORNEYS AT LAW, P.C.

                        By: /s/Carol A. Laughbaum
                              Carol A. Laughbaum (P41711)
                              Attorneys for Plaintiff
                              33 Bloomfield Hills Pkwy., Ste. 250
                              Bloomfield Hills, MI 48304
Dated: June 26, 2023           (248) 644-1500