UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALEXANDER T. CROCKETT

    Plaintiff,

v.                Civil Case No. 23-11522
                  Honorable Linda V. Parker

AUDI OF AMERICA, LLC

    Defendant.
_____/

### OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION (ECF NO. 8)

Plaintiff Alexander Crockett ("Crockett") filed this lawsuit against Defendant Audi of America, LLC ("Audi") [1], alleging employment discrimination. Presently before the Court is Audi's motion to compel arbitration (ECF No. 8). The motion is fully briefed. (ECF Nos. 8, 10, 11.)  With the findings of fact and legal arguments sufficiently presented in the parties' briefs, the Court is dispensing with oral argument pursuant to Local Rule 7.1(f)(2).  For the reasons stated below, Audi's motion is granted.

---

[1] Audi of America, LLC "is part of the Volkswagen Group of America" (VWGoA). (ECF No. 4 ¶ 4.)

### I. Factual Background

A. <u>Crockett's Employment</u>

Crockett began employment with Audi in June 2013. (ECF No. 4 ¶ 9.) He alleges that throughout his employment, his supervisor made disparaging comments about the fact that he was not born in Germany. (*Id.* ¶ 16.) He further alleges that he advised his direct manager about the "belittling treatment and hostility" and "discriminatory comments about [Plaintiff's] national origin" to his supervisor in an attempt for it to stop. (*Id.* ¶ 24.) In response to his complaint, Crockett alleges that he received a "Final Written Warning," his "first disciplinary action he had ever received [in 10 years]" which contained "false and trumped-up allegations." (*Id.* ¶¶ 25-26.) Finally, Crockett alleges that on January 24, 2023, he disclosed that he had been diagnosed with Autism Spectrum Disorder (ASD) and was terminated on February 3, 2023, without explanation. (*Id.* ¶¶ 29-30.)

On June 26, 2023, Crockett filed his initial complaint against Audi of America, Inc., asserting four causes of action: (I) national origin harassment and discrimination in violation of Michigan's Elliott-Larson Civil Rights Act (ELCRA); (II) retaliation in violation of the ELCRA; (III) disability discrimination in violation of Michigan's Persons with Disabilities Civil Rights Act (PDCRA); and (IV) intentional infliction of emotional distress. (ECF No. 1.).

On July 26, 2023, Crockett filed his First Amended Complaint ("FAC"), asserting the same four causes of action but correctly identified Defendant as Audi of America, LLC and not Audi of America, Inc. (ECF No. 4.) Audi now moves to stay Crockett's claims and compel arbitration.

B.  The Arbitration Agreements

On June 24, 2013, Crockett signed an Agreement to Arbitrate (the "2013 Agreement") which reads, in relevant part, as follows:

> Submission to Arbitration. Any and all disputes which involve or relate in any way to Employee's employment (or termination of employment) with VWGoA, whether initiated by Employee or by VWGoA, shall be submitted to and resolved by final and binding arbitration.
>
> Waiver of Right to Jury Trial. I understand that by entering into this Agreement, I am waiving any right I may have to file a lawsuit or other civil proceeding relating to my employment with VWGoA, and that I am waiving any right I may have to resolve employment disputes through a jury trial.
>
> Covered Claims. This Agreement is intended to cover all civil claims which relate in any way to my employment (or termination of employment) with VWGoA including, but not limited to, arbitrable claims of employment discrimination or harassment on the basis of race, sex, age, religion, color, national origin, sexual orientation, disability and veteran status (including any local, state or federal law concerning employment or employment discrimination), claims based on violation of public policy or statute, and claims against individuals or entities employed by, acting on behalf of, or affiliated with VWGoA ("Claims).

*  *  *

3

> <u>Duration of Agreement.</u> VWGoA and I agree that this Agreement shall remain in full force and effect at all times during and subsequent to my employment with VWGoA, or any successor in interest to VWGoA.
>
> <u>Modifications to Agreement.</u> This Agreement may be modified or amended only by a writing signed by me and by an officer of VWGoA which specifically references this Agreement. No employee or agent of VWGoA is authorized to make any agreement, understanding or agreements to the contrary.

(ECF No. 8-1 at PageID. 67-69) (underlines added). Notably, Crockett's signature, print name, and date appear to be handwritten on this agreement. (*See id.* at PageID. 69.)

On August 10, 2020, Audi sent an email to Crockett, and other employees, that it was "replacing the Agreement to Arbitrate with a new Mutual Arbitration Agreement" and "rescinding its existing Agreement to Arbitrate." (ECF No. 8-1, at PageID. 71; ECF No. 10-3 at PageID. 145.)[2] The new agreement (the "2020

---

[2] The parties appear to have produced two different versions of the August 10, 2020, email. Interestingly, both party's emails state that they were sent at 1:13 pm on August 10, 2020, however, neither party's email clearly indicates that Crockett was the recipient. The emails are also formatted differently. *Compare* ECF No. 8-1 at PageID. 74 *with* ECF No. 10-3 at PageID. 145. Even more interesting, Crockett's version of the email does not contain the following language found in Audi's version:

> Please review [the 2020 Agreement] carefully as it supersedes any agreement concerning arbitration you may have already signed. After you have reviewed it, you will be asked to acknowledge receipt and consent. **We ask all employees to complete this process by <u>August 31, 2020</u>**. Please understand that you are required to sign this document as a condition of your continued employment with the Company.

Agreement") could be accessed after completing an online training. (ECF No. 8-1, at PageID. 63.) At the conclusion of the training, employees would be prompted to agree to the 2020 Agreement by checking a box which reads:

> As an employee of VWGoA, I agree to and accept the terms and conditions of VWGoA's Arbitration Agreement. I am giving up my rights to a court or jury trial and agreeing to arbitrate disputes covered by this agreement. By submitting this electronically, I am acknowledging that this is the legal equivalent of my manual signature.

(*Id.* at PageID. 82.) Checking this box at the conclusion of the online training is necessary to complete the training. (*Id.* at PageID. 64 ¶ 11.)

The 2020 Agreement provides, in relevant part, as follows:

> **CLAIMS COVERED BY THE AGREEMENT:** This Agreement is intended to be as broad as legally permissible, and, except as it otherwise provides, applies to all claims or controversies, past, present, or future, including without limitation, claims arising out of or related to Your application and selection for employment, employment, and/or the termination of Your employment, that otherwise would be resolved in a court of law or before a forum other than arbitration.
>
> \* \* \*
>
> Except as it otherwise provides, this Agreement applies, without limitation, to claims based upon or related to discrimination, harassment, retaliation, defamation (including post-employment defamation or retaliation), breach of a contract or covenant, fraud,

---

(ECF No. 8-1 at PageID. 74) (alteration added) (emphasis in original). However, Crockett's version of the email contains the same subsequent sentences found in Audi's version of the email, which states that should Crockett have any questions, he should contact his HR Consultant. While these emails differ, they do not create a genuine issue of material fact as to Plaintiff Crockett's assent to the 2020 Agreement.

>negligence, breach of fiduciary duty, trade secrets, unfair competition, wages, minimum wage and overtime or other compensation or any monies claimed to be owed, meal breaks and rest periods, termination, tort claims, common law claims, equitable claims, and claims arising under the . . . Civil Rights Act of 1964, Americans with Disabilities Act . . . state statutes or regulations addressing the same or similar subject matters, any and all claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance.

(*Id.* at PageID. 79.)

On September 23, 2020, Audi sent a companywide email to employees who had not yet signed the 2020 Agreement. (*Id.* at PageID. 73.) That same day, Audi's records indicate that Crockett signed the 2020 Agreement. (*Id.* at PageID. 64; *see also* PageID. 76.)

C. The Parties' Arguments

The parties do not dispute the scope of the 2020 Agreement, or whether Crockett's claims are covered under it. (*See* ECF No. 10 at PageID. 114.) The parties dispute whether Crockett assented to the 2020 Agreement. (*See id.* at PageID. 119.) Crockett's attached declaration asserts that he "never checked a box indicating agreement and acceptance of the 2020 arbitration agreement." (ECF No. 10-3 at PageID. 141.) Crockett argues that while he received a version of the August 10, 2020, email, he "never received the September 23, 2020 'reminder email.'" (ECF No. 10 at PageID. 119.) Crockett further argues that use of any documents not found in his personnel file is a violation of Michigan's Bullard-Plawecki Employee Right-to-Know Act. (*Id.* at PageID. 127.)

6

Audi argues that Crockett's assent to the 2020 Agreement is valid and, even if it wasn't, Crockett's continued employment manifested his assent to be bound by the 2020 Agreement. (ECF No. 8 at PageID. 52.) Audi further argues that the 2020 Agreement was a novation of the 2013 Agreement and if the 2020 Agreement is unenforceable, then the 2013 Agreement should be enforced. (*Id.* at PageID. 55.) Lastly, Audi argues that their failure to timely produce the records in Crockett's personnel file was the result of a clerical error and should not be excluded from the Court's consideration. (ECF No. 11 at PageID. 168.)

## II.   Legal Standard

The Federal Arbitration Act ("FAA") requires district courts to compel arbitration of claims covered by a valid arbitration agreement. *Bazemore v. Papa John's U.S.A., Inc.*, 74 F.4th 795, 797–98 (6th Cir. 2023) (citing 9 U.S.C. § 4). The party seeking arbitration must prove that such an agreement exists. *Id.* at 798 (citing *Boykin v. Family Dollar Stores of Mich., LLC*, 3 F.4th 832, 839 (6th Cir. 2021)). When a party files a motion to compel arbitration, the party opposing arbitration "must show a genuine issue of material fact as to the validity of the agreement to arbitrate. The required showing mirrors that required to withstand summary judgment in a civil suit." *Great Earth Cos. v. Simons*, 288 F.3d 878, 899 (6th Cir. 2002). The opposing party may challenge the validity of the arbitration

7

agreement "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

When considering a motion to compel arbitration, the court must consider whether: (1) a valid arbitration agreement exists between the parties; (2) the disputes fall within the scope of the agreement; (3) Congress intended for certain federal statutory claims to be nonarbitrable; and (4) if some of the claims fall outside the scope of the arbitration agreement, whether those claims will be stayed pending arbitration. *Orcutt v. Kettering Radiologists, Inc.*, 199 F. Supp. 2d 746, 750 (S.D. Ohio 2002) (citing *Compuserve, Inc. v. Vigny Int'l Finance, Ltd.*, 760 F. Supp. 1273, 1278 (S.D. Ohio 1990)).

### III.  Legal Analysis

A. <u>Michigan's Bullard-Plawecki Employee Right-To-Know Act</u>

As an initial matter, Crockett argues that Michigan's Bullard-Plawecki Employee Right-to-Know Act (the "Act") precludes the Court from considering evidence that was not transmitted to him when he requested his personnel files from Audi. (ECF No. 10 at PageID. 127.) The Act requires Michigan employers to provide their employees access to the employee's personnel files upon a written request. *Razmus v. Am. Signature, Inc.*, No. 19-275, 2019 WL 9097882, at *2 (W.D. Mich. Dec. 4, 2019) (citing Mich. Comp. Laws § 423.503.) The Act also provides that when documents are not included in an employee's personnel file but

should have been included as required by the Act, the documents cannot be used by the employer in a judicial proceeding, subject to some exceptions. *Id.* The Act further provides that:

> personnel record information which, in the opinion of the judge in a judicial proceeding or in the opinion of the hearing officer in a quasi-judicial proceeding, was not intentionally excluded in the personnel record, may be used by the employer in the judicial or quasi-judicial proceeding, if the employee agrees or if the employee has been given a reasonable time to review the information.

Mich. Comp. Laws § 423.502.

First, the Court is not convinced that the arbitration agreements at issue or the attached training transcripts constitute "personnel records" under the Act. The Act defines "personnel records" as:

> a record kept by the employer that identifies the employee, to the extent that the record is used or has been used, or may affect or be used relative to that employee's qualifications for employment, promotion, transfer, additional compensation, or disciplinary action.

Mich. Comp. Laws § 423.501.

Nonetheless, even if these items are "personnel records," as outlined, if they were not "intentionally excluded," they will not be precluded as Crockett has not made a showing that he was not provided with an opportunity to review them. *See* Mich. Comp. Laws § 423.502.

"A record is 'intentionally excluded' from the personnel file when a representative of an employer makes a conscious decision to keep it separate, and

9

especially when the employer refrains from turning it over when a formal Bullard-Plawicki request is made." *Burke v. Health Plus of Mich., Inc.*, No. 01-10335, 2003 WL 102800, at *9 (E.D. Mich. Jan. 7, 2003). Further, "[t]he good-faith exception exempts clerical oversights in providing particular portions of a file." *Id.* (alteration added).

Defendant Audi argues that Crockett failed to comply with the Act by failing to request an opportunity to review his personnel files prior to requesting his own copy of the files. The Act requires that:

> An employer, upon written request which describes the personnel record, shall provide the employee with an opportunity to periodically review . . . the employee's[3] personnel record if the employer has a personnel record for that employee. The review shall take place at a location reasonably near the employee's place of employment and during normal office hours.

Mich. Comp. Laws § 423.503. The Act also states that "[a]fter the review provided in [Section 503], an employee may obtain a copy of the information or part of the information contained in the employee's personnel record." Mich. Comp. Laws § 423.504.

Crockett requested his personnel file two weeks after his termination and received only a one-page record in response. (ECF No. 10-4 at PageID. 146.) He

---

[3] The Act defines "Employee" as a person "currently employed or formerly employed by an employer." Mich. Comp. Laws § 423.501

10

followed-up to confirm that his record was only one page and was told that there is "nothing else in your electronic file." (*Id.*)

On June 26, 2023, Crockett filed this lawsuit (ECF No. 1) and on August 3, 2023, he was provided with the arbitration agreements. (ECF No. 11-1.) Crockett did not request an opportunity to review his personnel record prior to requesting a copy of it, as required by the Act.

Audi argues that its failure to produce the agreements was a clerical error. (ECF No. 11 at PageID. 168.) It further argues that Crockett did not take the opportunity to review these documents before the filing of the instant motion. (*See id.* at PageID. 167 ("Plaintiff did not, at any time[,] request the opportunity to review his personnel file. . . .[B]ecause Plaintiff did not request to review his file, as is required, [Defendant] Audi was never under any obligation to provide a copy of Plaintiff's personnel record.").)

Because it appears that there was a clerical error in Audi's production of Agreements and transcript, and Crockett did not request an opportunity to review the documents prior to requesting a copy of them as required by the Act, the Court will not preclude Audi from relying on these documents.

11

B. <u>2020 Agreement</u>

Crockett argues that the 2020 Agreement lacks his assent as he states that he "never checked a box indicating agreement and acceptance of the 2020 arbitration agreement." (ECF No. 10-3 at PageID. 141.)

Presently, Crockett's blanket assertion that he denies checking the box agreeing to arbitration does not create a genuine issue of fact. Audi has satisfied its burden to prove that Crockett assented to the agreement. Audi provided the declaration of Kelly VanTiem, employed by Audi as an HR Consultant Sr., who has access to the employee records and details the procedure to electronically sign documents. (ECF No. 8-1 at PageID. 62-65.) Her declaration provides that "Mr. Crockett had to check a box indicating that he agreed to and accepted the terms and conditions of VWGoA's [2020 Agreement]." (*Id.* at PageID. 64 ¶ 11.)

Ms. VanTiem's declaration further provides the transcript indicating that Crockett completed the Mutual Arbitration Agreement course on the same day that Audi sent a reminder email. (*Id.* at PageID. 76-77.) Her declaration states that in order for Crockett to complete the course, he had to agree to the 2020 Agreement. (*Id.* at PageID. 64 ¶ 11.) The declaration further provides that after Crockett completed the course "he was no longer included on the list of colleagues who had not yet signed the [2020 Agreement]." (*Id.* at PageID. 64 ¶ 12.)

Further, there is no dispute that Crockett was aware of the agreement. He acknowledges that he received an email, albeit a differently formatted email, advising that there was a new arbitration agreement from the company for him to sign. (ECF No. 10-3 at PageID. 145.) Audi has also submitted a second declaration from Ana Berea, Senior eDiscovery Paralegal, attesting that Crockett received both the email indicating that signing the 2020 Agreement was a condition of his employment, and the reminder email that he had failed to complete the training. (ECF No. 13-1 at PageID. 255-62.) He would sign the agreement on the same day.

Crockett's blanket declaration that he did not "check the box" to sign the agreement is insufficient to show that he did not assent to the agreement. *See Brown v. Heartland Emp. Servs., LLC*, No. 19-11603, 2020 WL 2542009, at *4 (E.D. Mich. May 19, 2020) (citing *Mazera v. Varsity Ford Mgmt. Servs.*, 565 F.3d 997, 1002 (6th Cir. 2009) (employee's declaration that she did not see or did not remember electronically signing arbitration agreement "fails to place the validity of the contract at issue under Sixth Circuit law").

Moreover, Crockett's declaration that typical e-sign procedures were not followed does not create a genuine issue of material fact. Crockett's declaration states that to put an e-signature on a document, employees must use their employee ID badge and enter a secure pin. (ECF No. 10-3 at PageID. 142.) This explanation

13

does not speak to Defendant Audi's claims. Defendant Audi states that Crockett assented to the 2020 Agreement by completing a web based training and checking a box at the conclusion of the online course. The e-sign procedure does not create a genuine issue of material fact on this issue.

Further, Crockett's declaration that "it is noteworthy that there is no score listed with respect to the listed arbitration web-based training course," also does not create a genuine issue of material fact. (*Id.* at PageID. 143.) Crockett does not state that he did not take the course requiring him to assent to the 2020 Agreement. Also, Crockett does not explain what is noteworthy about a score not being present under this course on his transcript. While he states that this may indicate that the entry was "manually created in the system," (*see id.*) approximately fifteen courses listed on his transcript do not have a score. (ECF No. 8-1 at PageID. 76-77.)

Therefore, Audi has met its burden to show that there is no genuine issue of material fact that Crockett assented to the 2020 Agreement. As a result, the 2020 Agreement between the parties is an enforceable arbitration agreement. Because Plaintiff Crockett's assent to the 2020 Agreement is valid, the Court need not address Audi's argument that his continued employment manifested his assent to the 2020 Agreement.

C. <u>The 2013 Agreement – Novation</u>

The parties do not argue the validity of the 2013 Agreement. Audi argues that their 2020 Agreement was a novation of the 2013 Agreement. (ECF No. 8 at PageID. 55.) Plaintiff Crockett argues that the 2013 Agreement was rescinded, and no agreement was made to replace it. (ECF No. 10 at PageID. 126.) A novation is generally defined as "[t]he act of substituting for an old obligation a new one that either replaces an existing obligation with a new obligation or replaces an original party with a new party." Novation, Black's Law Dictionary (11th ed. 2019).

To prove novation a party must show the following: (1) parties capable of contracting; (2) a valid prior obligation to be displaced; (3) the consent of all parties to the substitution based upon consideration; and (4) the extinction of the old obligation and the creation of a valid new one. *BRB Printing, Inc. v. Buchanan*, 892 F. Supp 190, 192 (E.D. Mich. 1995) (citing *George Realty Co. v. Gulf Refining Co.*, 266 N.W. 411, 414 (Mich. 1936)).

The 'Modification' section of the 2013 agreement reads as follows:

> <u>Modifications to Agreement.</u> This Agreement may be modified or amended only by a writing signed by me and by an officer of VWGoA which specifically references this Agreement. No employee or agent of VWGoA is authorized to make any agreement, understanding or agreements to the contrary.

(ECF No. 8-1 at PageID. 69.) While the August 10, 2020, email stated that Audi was "rescinding its existing Agreement to Arbitrate," no modification of the 2013

15

Agreement would be valid unless signed by Crockett and an officer of Audi (or VWGoA). As a result, even if Crockett did not assent to the 2020 Agreement, the 2013 Agreement would remain in full force and effect, as it would not be extinguished. *See Quality Prods and Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 258 (Mich. 2003) ("[W]here there is no mutual agreement to enter into a new contract modifying a previous contract, there is no new contract and thus no modification."). Crockett's argument that the 2013 Agreement needs to be resurrected fails because if the 2020 Agreement was invalid, the 2013 Agreement would control, as no novation would have occurred. No resurrection of the 2013 Agreement would be necessary as it would remain in full effect.

> Further, as previously stated, the 2013 Agreement covered:
>
> all civil claims which relate in any way to [Crockett's] employment (or termination of employment) with VWGoA including, but not limited to, arbitrable claims of employment discrimination or harassment on the basis of race, sex, age, religion, color, national origin, sexual orientation, disability and veteran status (including any local, state or federal law concerning employment or employment discrimination), claims based on violation of public policy or statute, and claims against individuals or entities employed by, acting on behalf of, or affiliated with VWGoA.

(ECF No. 8-1 at PageID. 67.) Therefore, Crockett's claims would be covered under the 2013 Agreement, as they would be under the 2020 Agreement.

16

## IV.  Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Audi's motion to compel arbitration (ECF No. 8) is **GRANTED**.

**IT IS FURTHER ORDERED** that this matter is **STAYED**, and the parties shall submit all of their claims to arbitration.

**SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: March 30, 2024